UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Docket No. 1:20-cr-10006-NMG |
| ) | |
| ) | |
| David Wood ) | |

**<u>Sentencing Memorandum</u>**

  Counsel for Mr. Wood files this memorandum in aid of his upcoming sentencing hearing. The parties jointly propose a sentence of 36 months, followed by 3 years of supervised release with conditions to include a geographic exclusion zone. This proposed sentence is supported by the statutory 3553(a) factors and is consistent with the advisory guideline range that is applicable in this case (30-37 months). A 3-year sentence fairly balances Mr. Wood's conduct in this case, his prior history and personal circumstances, as well as the potential for rehabilitation through the term of supervised release. At 32 years old, Mr. Wood is at a turning point. He understands that this may be his last chance to turn things around and not spend a much lengthier time behind bars, should he get into any trouble again.

  This jointly proposed sentence meets each of the statutory criteria. Pursuant to 18 U.S.C. §3553(a)(2), the court must consider the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The court must also consider the nature and circumstances of the defendant, the kinds of sentences available, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Here, the negotiated sentence encompasses each of the sentencing criteria, and fairly balances Mr. Wood's prior criminal history, the nature of this case, as well as his personal history and the goal of rehabilitation. It is a sentence near the top of the advisory guideline range and is therefore a serious consequence that sends a strong message to Mr. Wood and to the community. It is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. United States v. Kimbrough, 128 S.Ct. 558 (2007); United States v. Booker, 125 S.Ct. 738 (2005); United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v. Rodriguez, 527 F.3d 221 (1st Cir. 2008).

A. **Advisory Guidelines & Nature and Circumstances of the Offense**

The facts of the case are straightforward and uncomplicated. Mr. Wood sold drugs to a cooperating witness in the Fall of 2019. The indictment charged Mr. Wood with 3 instances of selling small amounts of fentanyl and one instance of selling cocaine base in the November-December of 2019. Each of the sales involved relatively small amounts of drugs (0.92 grams, 6.2 grams; 4.1 grams). The search of his residence revealed an additional 16.59 grams of fentanyl. Based on the total amount of drugs involved in this case, the base offense level is correctly calculated as level 20. PSR ¶ 30. No other enhancements apply in this case; after acceptance of responsibility, Mr. Wood's total offense level is 17. Mr. Wood's prior criminal history is properly scored as 6 points, placing him in a criminal history category III, with an advisory guideline range of 30-37 months. Mr. Wood agrees with this calculation.

B. **History and Characteristics**

Mr. Wood was raised by his mother and grandmother, in a home frequently under financial stress. Mr. Wood's father was incarcerated for the majority of his childhood. It is difficult to conceive that Mr. Wood's absence from his life (in jail) did not have an impact on his early years. When his father was not in jail, he was abusive to Mr. Wood's mother. As a child, Mr. Wood watched his father hit his mother. He saw both parents get arrested and charged with assault after late-night fights. See PSR ¶ 66. At one point, his mother had to move out of state because she was afraid of serious violence, even fear that she could lose her life, at the hands of his father. Id.  He experienced little stability during these important early years of development.

Needless to say, Mr. Wood's childhood was difficult. Mr. Wood's mother struggled to raise her son. She often resorted to physical punishment, which sometimes resulted in hospitalization for Mr. Wood as a child. See PSR ¶ 67. The Department of Family Services became involved in his care due to suspected abuse and neglect. Id. Later, when his mother lost subsidized housing, he was placed in foster care at the age of 14. PSR ¶ 68. It was during these vulnerable teenaged years that Mr. Wood started to get into trouble. His prior criminal history involves trespass, reckless driving, assault, and an attempted robbery at age 18. Mr. Wood's most serious prior conviction is his federal case of prohibited possession of a firearm, when he was 20 years old. 10-CR-10127, PSR ¶ 50.

The present case results in a disappointing return to Federal Court. The conduct involves selling small amounts of drugs to an informant, which is certainly not an insignificant crime, but is a marked change from a case involving violence or possession of a weapon.  Mr. Wood understands that he is at a turning point. He is 32 years old. He is tired of being in and out of custody. The last year of time in custody during the pandemic has caused a shift in Mr. Wood's

mindset. Most recently, he has taken advantage of the limited opportunities available in custody. He earned certificates for programs offered at Wyatt: "Adjustment to Incarceration and Rational Thinking." Exhibit A. He also completed a course entitled "Rational Thinking." Exhibit B. Mr. Wood currently works as a mod-worker on the unit at Wyatt, earning praise from his supervisors. See Exhibit C.

These examples provide some insight into the different attitude Mr. Wood expresses during this period of incarceration. Working on the mod has given him a sense of purpose during a time when the circumstances inside the jails have been frightening and uncertain. Mr. Wood enjoyed the structure of this work, and hopes to connect it to a similar feeling when he finds employment on supervised release following his jail sentence.

Mr. Wood also understands that this may be his last chance at a moderate sentence. Should he return to federal court, his guidelines and potential exposure could result in a colossal sentence. He understands that.

### C. Seriousness of the Offense, Just Punishment, Kinds of Sentences, Rehabilitation

Here, the crime itself is not extraordinary. The parties took into consideration the offense and Mr. Wood's history and other circumstances in his background to arrive at a sentence near the top of the advisory guideline range. It is a significant sentence. One major turning point for Mr. Wood has been his experience of serving time during the COVID-19 outbreak in the jails.

It is important to note that this jail sentence during this moment in time has been a more severe experience than it would have been 2 years ago. First, the circumstances are far more stressful for those incarcerated, and the prison facilities have far less mental health resources to safely handle these struggles. Second, due to the safety precautions, there are far less opportunities for programming and rehabilitation. These deficits matter. Mr. Wood's period of

pretrial custody has been frightening, stressful, and stagnant. Due to the necessary COVID precautions in the jail setting, Mr. Wood spent the majority of the pandemic on lockdown most hours of the day. These circumstances have made the time done to date much harder, much more restrictive, and with limited opportunity for pre-release rehabilitation. Nonetheless, once those programs became available at Wyatt, Mr. Wood signed up and participated. He was ready to open himself to programming in a way unlike he had in previous times in jail.

It is unclear what other programming will be available to Mr. Wood while in BOP custody. However, Mr. Wood looks ahead to supervised release with a new attitude and focus. He wants to take advantage of programming offered through United States Probation including access to job training and completing his GED. The proposed 3-year period of supervised release will provide suitable structure to Mr. Wood as he tries to bridge the programs he took part in custody with the outside world.

### D. Conditions of Supervised Release

Mr. Wood agrees to the Exclusion Zone as identified in Attachment A to the Plea Agreement. Dkt. 64.  This geographic area marks the location of his criminal conduct in this case, and he agrees to the restriction as proposed. He also understands that the Probation office can modify the conditions as it sees fit depending on Mr. Wood's rehabilitation, including work and school.

### A. Overall Sentence

The court can properly consider all of this information to conclude that the proposed sentence is appropriate for Mr. Wood. The sentence of 3 years incorporates the guideline range as well as the 3553(a) factors. As the court stated in *Rodriguez,*

> "In the final analysis, then, the gloss supplied by *Kimbrough* signifies that a district court should not evaluate a request for a variant sentence piecemeal, examining each

section 3553(a) factor in isolation, but should instead consider all the relevant factors as a group and strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing. This inquiry should be guided by, but not made unflinchingly subservient to, the concerns expressed in the statute's various sub-parts." Id. at 228.

Here, when the Court considers all the relevant factors as a group, a sentence of 36 months is logical, practical, and supported. The Court must "strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing. Here, Mr. Wood's conduct requires a period of isolation to appreciate the seriousness of the offense. He has been incarcerated now for almost 18 months. He has been separated from his family, without significant rehabilitative programming.  Mr. Wood is eager to complete his GED and to enroll in job-training programs and can do so with the guidance and support of United States Probation.

The parties believe that the appropriate sentence here balances jail and rehabilitation through the conditions of supervised release. Specifically, the parties ask that the Court accept the plea agreement and sentence Mr. Wood to 36 months custody, with 3 years of supervised release, with the standard and special conditions of supervision outlined in the PSR.  This requested sentence is supported by the 3553(a) factors and the United States Guidelines.

        Respectfully submitted,
        David Wood

        By his Attorney,

        */s/ Cara McNamara*
        Cara McNamara
        AK 0511088
        Assistant Federal Public Defender
        Federal Public Defender Office
        51 Sleeper Street, 5th Floor
        Boston, MA  02210
        Tel: 617-223-8061

## **CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 11, 2021.